```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                      EASTERN DISTRICT OF OKLAHOMA

PAULA ARD,                       )
                                 )
            Plaintiff,           )
                                 )
v.                               )       Case No. CIV-14-156-RAW-KEW
                                 )
CAROLYN W. COLVIN, Acting        )
Commissioner of Social           )
Security Administration,         )
                                 )
            Defendant.           )
```

## REPORT AND RECOMMENDATION

Plaintiff Paula Ard (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on December 3, 1964 and was 48 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a teacher's aide and production worker. Claimant alleges an inability to work beginning January 1, 2009 due to limitations resulting from migraine headaches, a sleep disorder, and anxiety.

**Procedural History**

On November 11, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On December 14, 2012, an administrative hearing was held before Administrative Law Judge ("ALJ") Edward M. Starr. On March 25, 2013, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on February 19, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work. The ALJ also found Claimant could perform light work with limitations at step five.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in failing to account for Claimant's migraine headaches in his RFC assessment after

4

finding them to be a severe impairment.

## RFC Evaluation

In his decision, the ALJ determined Claimant suffered from the severe impairments of migraines and anxiety. (Tr. 10). The ALJ also found Claimant retained the RFC to perform her past relevant work as a production worker. (Tr. 18). He also found Claimant could perform light work except that she could understand, remember and carry out simple, routine, repetitive tasks. She could respond to usual work situations and routine work changes, could respond to supervision that was simple, direct, and concrete, and could occasionally interact with supervisors, co-workers, and the public. (Tr. 12). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of maid/housekeeping cleaners, routing clerk/conveyer belt packager/mail sorter, and production assembler, which he testified existed in sufficient numbers in the regional and national economies. (Tr. 19).

Claimant contends the ALJ failed to include limitations in the RFC assessment associated with her severe impairment of migraine headaches. On January 21, 2008, Claimant was attended by Dr. Tonya L. Phillips in the neurology department of Cooper Clinic. Dr. Phillips found Claimant still had problems with daily headaches

5

with "bad" headaches occurring once per month. She experienced residual mild headaches for about a week after a bad headache. Topamax helped the condition and Dr. Phillips increased the dosage as well as adding Migranol nasal spray. (Tr. 255).

On August 26, 2009, Claimant reported a headache that lasted for two days which was gradual and constant. The degree of severity was moderate with the mitigating factor being light avoidance. Claimant stated that she typically needed a shot to "knock her out." She reported the headaches occurred about once per month. (Tr. 272).

On June 7, 2011, Claimant stated that her dosage of Topamax was not working. She was prescribed an increase in the medication. (Tr. 362-63).

On January 11, 2012, Claimant was attended by Dr. Ronald Schlabach complaining of back and neck pain and migraine headaches. She stated that she suffered from the headaches for 19 years, the severity was moderate - an 8 out of 10 on the pain scale, and the problem had worsened. Claimant reported nausea, phonophobia, photophobia, and tinnitus. She also suffered from diplopia, fever, and vision loss on the left or right. She estimated that she suffered from 1-2 migraine headaches monthly with daily generalized headaches. (Tr. 282). Claimant was prescribed medication, advised

to continue her current medication and recommended to follow up with Dr. Phillips. (Tr. 286).

Upon returning to Dr. Phillips on January 23, 2012, Claimant reported that she lost her insurance but was continuing her medications for her headaches. She continued to have "fairly significant headaches" "practically every day." Claimant stated that she wakes up with a headache and was experiencing ringing in her ears although she worked around loud equipment at that time. Claimant took two Excedrin or two Tylenol or ibuprofen and the headache seemed to get better but that there are occasions when she does not take anything and the headache would get significant. (Tr. 293). Claimant reported that she does have occasional severe headaches every few months, to the point that she vomited but that it had been a couple of months since that happened. (Tr. 294).

On January 25, 2012, Dr. Clifford Evans performed a consultative examination on Claimant. Claimant stated she experienced "daily migraines," with some days worse than others, and medications were not effective. (Tr. 303). Dr. Evans concluded that the "[i]ntensity & frequency of migraines causes severe limitations in body as a whole." (Tr. 307).

On January 26, 2012, Dr. Stephen A. Whaley completed a physical RFC assessment form on Claimant. He concluded Claimant

7

could lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. (Tr. 314). Dr. Whaley noted Dr. Evans' findings with regard to Claimant's migraine headaches but found "it should be noted that there are no current records of clmt seeking any tx for migraines. [activities of daily living] appear partially credible." (Tr. 320).

Claimant testified that she suffered from daily headaches which affect her sleep and last three to four hours, ringing in her ears, and severe headaches which occur once or twice a month that last for 3 days. On those occasions, Claimant either goes to the hospital or Dr. Phillips for a shot. During the severe headaches, Claimant testified that she gets sick to her stomach and experiences sensitivity in her hearing and to light. After the third day, Claimant reported that she was drained. Claimant stated smells trigger her headaches. Claimant also noted that she experienced big knots and tension in her neck when the headaches occur. (Tr. 36-40). Claimant also stated that she missed three to five days of work per month due to headaches when she worked for Whirlpool which prompted her termination. (Tr. 35). The ALJ found that Claimant had given inconsistent reasons for her termination

8

over the disability application process which reflected adversely upon her credibility. (Tr. 13-14). The ALJ also found gaps in Claimant's treatment suggested that her symptoms were not as severe as she represented. (Tr. 14). The ALJ did not address the effect of Claimant's loss of insurance upon the gaps in treatment that he noted.

"RFC is what an individual can still do despite his or her limitations," and it constitutes "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, . . . may cause . . . limitations or restrictions that may affect his or her capacity to do work-related . . . activities." Soc. Sec. R. 96-8p. To determine a claimant's RFC, the ALJ must therefore assess the claimant's ability to perform the "physical demands of work activity, such as sitting, standing, walking, [and] lifting." 20 C.F.R. §§404.1545(b), 416.945(b). Further, the ALJ must assess "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis," and this requires the ALJ to "describe the maximum amount of each work-related activity the individual can perform." Soc. Sec. R. 96-8p. In addition, "[t]he RFC assessment must be based on all of the relevant evidence in the case record," including medical history,

medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, medical source statements, effects of symptoms, and evidence from attempts to work. Id. Finally, the ALJ "must . . . make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Id.

In this case, the ALJ failed to provide any accommodation in his RFC assessment for Claimant's primary source for limitation - her migraine headaches. His analysis concentrated primarily upon the lack of any physical limitations which would preclude the performance of her past relevant work or the alternative representative jobs identified in his decision. The ALJ included no environmental limitations imposed by her migraine headaches such as sensitivity to light, sound, or smell despite such restrictions appearing in the medical record. Indeed, migraine headaches are rarely referenced in the ALJ's decision at all. On remand, the ALJ shall re-evaluate the limitations brought about by Claimant's migraine headaches and consider whether further restrictions from the condition should be included in the RFC assessment. The ALJ shall further consider whether the lack of insurance affected the gap in treatment which the ALJ relied upon to reject Claimant's credibility.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 20th day of July, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE